UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LINDA R. RAPPAPORT, *on behalf of herself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>UNDER ARMOUR, INC., *a Maryland corporation, and DOES 1-50, inclusive*,<br><br>Defendants. | **MEMORANDUM & ORDER**<br>24-CV-7558 (HG) |

**HECTOR GONZALEZ**, United States District Judge:

Plaintiff brings this case under New York General Business Law ("GBL") §§ 349 and 350, challenging Under Armour, Inc.'s ("Defendant") alleged practice of pricing its merchandise in a way that misleads consumers.

Plaintiff, on behalf of herself and others similarly situated, commenced this putative class action claiming that Defendant engaged in a deceptive pricing and advertising scheme that led her and others to believe that merchandise they purchased from Defendant's outlet stores and on its outlet website was subject to a substantial markdown from an allegedly false "original" or "reference" price. ECF No. 1.[1] Defendant moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 11-1.

For the following reasons, Defendant's motion to dismiss with prejudice is GRANTED.

---

[1] Unless otherwise indicated, the Court omits all internal quotation marks, alteration marks, emphases, footnotes, and citations when quoting cases and the parties' papers. The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

## BACKGROUND[2]

Like other "outlet store" cases that have arrived in federal court in recent years, Plaintiff "challenges defendant's alleged practice of pricing its products in a way that misleads buyers into believing that they are getting a steep discount on products when, in fact, there is no discount at all." *Binder v. Premium Brands Opco LLC*, No. 23-cv-3939, 2024 WL 2978506, at *1 (S.D.N.Y. June 11, 2024) ("*Premium Brands*"); *see also Binder v. Michael Kors (USA), Inc.*, No. 23-cv-3941, 2024 WL 3227943, at *1 (S.D.N.Y. June 28, 2024).

Plaintiff's claims center around her purchase of one item, a "Women's Mid Crossback Printed Sports Bra," from an Under Armour Factory outlet store in April 2024. ECF No. 1 ¶ 39. Plaintiff alleges that the item was displayed alongside materials that indicated the item was marked for an additional 50% off an original price (or "reference price") of $34.97, for a price of $17.48 (the "discount price"), leading her to believe "she was receiving a significant discount on the item she had chosen." *Id.* ¶¶ 39–41.

However, Plaintiff alleges that this discount was part of a "fake discount scheme" that not only deceived her into purchasing the sports bra that "was worth less than the amount she paid for it", but also "artificially inflated consumer demand," which enables Defendant to charge higher prices for the "supposedly discounted" products they offer at its Under Armour Factory stores (the "outlet stores") and online at underarmour.com/en-us/c/outlet/ (the "outlet website"). *Id.* ¶¶ 35–45.

---

[2]   The Court "recite[s] the substance of the allegations as if they represented true facts, with the understanding that these are not findings of the [C]ourt, as [I] have no way of knowing at this stage what are the true facts." *In re Hain Celestial Grp., Inc. Sec. Litig.*, 20 F.4th 131, 133 (2d Cir. 2021).

According to Plaintiff, her counsel "conducted a large-scale, comprehensive investigation" into Defendant's pricing practices at its outlet stores and the outlet website and collaborated with "qualified expert economists and consultants," who determined the "objective measure by which Plaintiff [and other consumers]" overpaid for the products they purchased from Defendant's outlet stores and website.  *Id.* ¶¶ 39, 46, 56.

Plaintiff commenced this case by filing a class action complaint on October 29, 2024. *See* ECF No. 1.  Plaintiff alleges that Defendant's conduct violates various New York consumer protection laws, specifically, the New York Consumer Protection from Deceptive Acts and Practices Act, GBL § 349, and New York False Advertising Act, GBL § 350. *Id.* ¶ 7.  Plaintiff also alleges that Defendant's conduct violates the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 52(a). *Id.*[3]  On December 13, 2024, Defendant filed a motion to dismiss the complaint. *See* ECF No. 11-1.  Plaintiff filed her opposition a month later, ECF No. 12, and Defendant filed its reply on January 27, 2025, ECF No. 15.

## LEGAL STANDARDS

I.     **Rule 12(b)(1)**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  To survive a motion to dismiss for lack of

---

[3]     Plaintiff cursorily alleges that Defendant violated the FTCA, *see* ECF No. 1 ¶ 7, but appears to abandon this claim, or at the very least, neglects to mention it elsewhere in the Complaint.  Notably, she does not include an FTCA claim as a standalone cause of action. *See id.* at 35–39.  Plaintiff also omits any mention of the FTCA in her opposition to Defendant's motion to dismiss, ECF No. 12.  Accordingly, the FCTA claim is not properly plead.  "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *O'Donnell v. AXA Equitable Life Ins.*, 887 F.3d 124, 128 (2d Cir. 2018); *see also Michael Kors (USA), Inc.*, 2024 WL 3227943, at *2 n.4 (applying the same approach to plaintiffs' "cursorily allege[d]" FCTA claim).

3

subject matter jurisdiction based on standing pursuant to Rule 12(b)(1), the plaintiff "must allege facts that affirmatively and plausibly suggest that it has standing to sue." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011).  Where the defendant places jurisdictional facts in dispute, a court may properly consider "evidence relevant to the jurisdictional question [that] is before the court." *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001).  However, if "the defendant challenges only the legal sufficiency of the jurisdictional allegations, the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Id*.

## II.     Rule 12(b)(6)

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  In assessing a complaint, courts "must construe it liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor." *Id.* at 106–07.  The Court must, however, disregard any "conclusory allegations, such as formulaic recitations of the elements of a cause of action." *Id.* at 107 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  And, when "the allegations of a complaint are materially inconsistent with the evidence a plaintiff relies on to make those allegations, [courts] may easily conclude that plaintiffs' claims lack the facial plausibility necessary to survive a motion to dismiss." *Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x. 701, 704 (2d Cir. 2020).

## DISCUSSION

Defendant argues that Plaintiff's claims should be dismissed for two reasons.  First, Defendant argues that, pursuant to Rule 12(b)(6), this case should be dismissed because Plaintiff

4

fails to plead an adequate injury to bring a claims under GBL §§ 349 and 350.  ECF No. 11-1 at 5–11.

Second, Defendant argues, pursuant to Rule 12(b)(1), that Plaintiff lacks standing to assert her claim because she did not adequately allege an injury under GBL §§ 349 and 350, and, she lacks standing to bring claims on behalf of unnamed class members because she did not purchase Defendant's product online and did not interact with Defendant's online pricing practices.  *Id.* at 9, 15–16.

In instances where "the defendant moves for dismissal under Rule 12(b)(1) . . ., as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first."  *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990); *Axon*, 813 F. App'x at 703–04 (analyzing Article III standing before deciding whether plaintiff met the injury requirement of GBL §§ 349 and 350).  Accordingly, the Court begins with Defendant's arguments pursuant to 12(b)(1).

### I.     Standing

Defendant's standing argument is two-pronged.  First, Defendant argues that Plaintiff lacks standing in this case because she has not adequately alleged an injury for purposes of her GBL §§ 349 and 350 claims and, therefore, lacks standing to bring this action under the Article III.  ECF No. 11-1 at 9.  Second, Defendant argues that Plaintiff lacks standing to assert any claims concerning transactions on or through Defendant's outlet website (the "web-based claims") because she does not allege that she made purchases from Defendant's online store and does not allege that she encountered Defendant's pricing practices online.  *Id.* at 15–16.

### A. Article III Standing

To satisfy Article III standing, "(1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016).

As previously mentioned, Defendant's standing argument is focused on the injury requirement. However, in the context of Article III standing, Defendant's argument fails. Plaintiff alleges that she purchased the sports bra at issue in reliance on the allegedly deceptive difference between the reference price and the discount price. ECF No. 1 ¶¶ 39–41. "Such an allegation that a plaintiff would not have purchased a product or would not have paid the same amount comfortably satisfies the injury-in-fact prong of Article III standing." *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 575 (S.D.N.Y. 2021); *see also DaCorta v. AM Retail Grp., Inc.*, No. 16-cv-1748, 2018 WL 557909, at *6 (S.D.N.Y. Jan. 23, 2018) ("The allegation that [p]laintiff would not have made this purchase, or would not have paid the amount she did, is sufficient for Article III injury.").

### B. Standing to Bring the Web-Based Claims

Moving on to Defendant's argument concerning Plaintiff's standing to bring the web-based claims, Defendant focuses on the fact that Plaintiff does not allege that she purchased products from the outlet website and fails to demonstrate that she encountered Defendant's pricing practices online. ECF No. 11-1 at 15–16. Specifically, Defendant takes issue with the fact that Plaintiff "does not even allege that the *same* sales were advertised online versus in-store where Plaintiff made her purchases," and "merely alleges that similar *types* of discounts are advertised online, for apparently different products at different price points and different

6

proportional discounts." ECF No. 15 at 14 (emphases in original). Plaintiff acknowledges that she did not make her purchase online, but she argues that she has standing nonetheless because Defendant's online pricing practices and the harm such practices cause are "substantially similar" to the in-store pricing practices on which she relied. ECF No. 12 at 20–25.

The parties extensively cite cases from the Ninth Circuit to support their respective web-based standing arguments. This is puzzling, considering the Second Circuit has addressed this issue. In *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.* ("*NECA-IBEW*"), the Second Circuit held:

> [I]n a putative class action, a plaintiff has class standing if he plausibly alleges (1) that he personally has suffered some actual injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants.

693 F.3d 145, 162 (2d Cir. 2012); *see also Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 561 (S.D.N.Y. 2016) (applying the *NECA-IBEW* standard to claims brought under GBL §§ 349 and 350). In other words, Plaintiff must plausibly allege: (1) a personal injury, sufficient to satisfy Article III standing, and (2) that such injury "implicates the same set of concerns" as Defendants' conduct that allegedly injured the putative class members. *Id.* Accordingly, the Court analyzes the parties' standing argument through this lens.

With respect to the first prong, as discussed above, Plaintiff's purchase of the sports bra based on her reliance on the difference between the various prices listed is an injury-in-fact for purposes of Article III standing. *See* Part I.A., *supra*.

Turning to the second prong, the Court finds that the web-based claims "implicate[] the same set of concerns" as the allegations concerning Defendant's in-store conduct. Defendant's argument that the web-based claims are not precisely the same as the in-store claims is too

proportional discounts." ECF No. 15 at 14 (emphases in original). Plaintiff acknowledges that she did not make her purchase online, but she argues that she has standing nonetheless because Defendant's online pricing practices and the harm such practices cause are "substantially similar" to the in-store pricing practices on which she relied. ECF No. 12 at 20–25.

The parties extensively cite cases from the Ninth Circuit to support their respective web-based standing arguments. This is puzzling, considering the Second Circuit has addressed this issue. In *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.* ("*NECA-IBEW*"), the Second Circuit held:

> [I]n a putative class action, a plaintiff has class standing if he plausibly alleges (1) that he personally has suffered some actual injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants.

693 F.3d 145, 162 (2d Cir. 2012); *see also Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 561 (S.D.N.Y. 2016) (applying the *NECA-IBEW* standard to claims brought under GBL §§ 349 and 350). In other words, Plaintiff must plausibly allege: (1) a personal injury, sufficient to satisfy Article III standing, and (2) that such injury "implicates the same set of concerns" as Defendants' conduct that allegedly injured the putative class members. *Id.* Accordingly, the Court analyzes the parties' standing argument through this lens.

With respect to the first prong, as discussed above, Plaintiff's purchase of the sports bra based on her reliance on the difference between the various prices listed is an injury-in-fact for purposes of Article III standing. *See* Part I.A., *supra*.

Turning to the second prong, the Court finds that the web-based claims "implicate[] the same set of concerns" as the allegations concerning Defendant's in-store conduct. Defendant's argument that the web-based claims are not precisely the same as the in-store claims is too

proportional discounts." ECF No. 15 at 14 (emphases in original). Plaintiff acknowledges that she did not make her purchase online, but she argues that she has standing nonetheless because Defendant's online pricing practices and the harm such practices cause are "substantially similar" to the in-store pricing practices on which she relied. ECF No. 12 at 20–25.

The parties extensively cite cases from the Ninth Circuit to support their respective web-based standing arguments. This is puzzling, considering the Second Circuit has addressed this issue. In *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.* ("*NECA-IBEW*"), the Second Circuit held:

> [I]n a putative class action, a plaintiff has class standing if he plausibly alleges (1) that he personally has suffered some actual injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants.

693 F.3d 145, 162 (2d Cir. 2012); *see also Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 561 (S.D.N.Y. 2016) (applying the *NECA-IBEW* standard to claims brought under GBL §§ 349 and 350). In other words, Plaintiff must plausibly allege: (1) a personal injury, sufficient to satisfy Article III standing, and (2) that such injury "implicates the same set of concerns" as Defendants' conduct that allegedly injured the putative class members. *Id.* Accordingly, the Court analyzes the parties' standing argument through this lens.

With respect to the first prong, as discussed above, Plaintiff's purchase of the sports bra based on her reliance on the difference between the various prices listed is an injury-in-fact for purposes of Article III standing. *See* Part I.A., *supra*.

Turning to the second prong, the Court finds that the web-based claims "implicate[] the same set of concerns" as the allegations concerning Defendant's in-store conduct. Defendant's argument that the web-based claims are not precisely the same as the in-store claims is too

literal. Indeed, "in the context of claims alleging injury based on misrepresentations, the misconduct alleged will almost always be the same: the making of a false or misleading statement." *NECA-IBEW*, 693 F.3d at 162 (finding that district court erred in requiring plaintiff to show its injuries were precisely the same as those who bought the product at issue elsewhere). Here, because the web-based claims concern the allegedly deceptive pricing practices that Defendant uses in connection with selling its outlet products, they "implicate[] the same set of concerns," and the second prong is met. *See id.*; *Buonasera*, 208 F. Supp. 3d at 563 (finding that alleged misrepresentations about products purchased by class members but not the named plaintiff were "sufficiently similar" to the alleged misrepresentations concerning products purchased by named plaintiff). Thus, Plaintiff has standing to bring the web-based claims.

For the foregoing reasons, Plaintiff has adequately pled an injury-in-fact necessary for Article III standing and sufficiently met the requirements necessary for her to bring the web-based claims on behalf of putative class members.

## II.     The New York Claims

"Although the Court has concluded that Plaintiff adequately pleaded an injury-in-fact for purposes of Article III standing, whether Plaintiff has properly alleged an injury for [her GBL] §§ 349 and 350 claims requires a separate inquiry." *Colpitts*, 527 F. Supp. 3d at 576; *see also Ross v. Bank of Am., N.A.(USA)*, 524 F.3d 217, 222 (2d Cir. 2008) (noting that injury for standing purposes "is a low threshold" and "need not be capable of sustaining a valid cause of action").

Defendant argues that the Complaint should be dismissed because Plaintiff does not allege an adequate injury under New York's consumer protection laws. ECF No. 11-1 at 9–15. To support a claim under the specific consumer protection laws at issue—GBL §§ 349 and

350—a plaintiff must show: "(1) the challenged transaction was consumer-oriented; (2) defendant engaged in deceptive or materially misleading acts or practices; and (3) plaintiff was injured by reason of defendant's deceptive or misleading conduct." *Izquierdo v. Panera Bread Co.*, 450 F. Supp. 3d 453, 461 (S.D.N.Y. 2020). Defendant's challenge focuses on the third element. In Defendant's view, Plaintiff's complaint should be dismissed because she fails to establish, and cannot establish, a cognizable injury under GBL §§ 349 or 350. *See* ECF No. 11-1 at 10.

To adequately plead an injury under the applicable New York laws, "a plaintiff must allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." *Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015). "In the consumer goods context, an allegation of a defendant's deception alone does not suffice to plead injury, because a plaintiff may have received the benefit of the bargain despite the alleged misrepresentation." *Colpitts*, 527 F. Supp. 3d at 576. In outlet store cases such as this one, plaintiffs have attempted to plead adequate injury through a handful of different theories. *See e.g.*, *Michael Kors (USA), Inc.*, 2024 WL 3227943, at *3 (describing plaintiffs' three theories of injury). In the instant case, Plaintiff alleges injury under two well-worn theories.

First, Plaintiff alleges that she sustained an ascertainable loss in the form of the total purchase price she paid for the merchandise in question because she would not have purchased the product if it had not been for Defendant's allegedly false advertising (the "purchase-price theory"). *See* ECF No. 1 ¶¶ 41–42. Second, Plaintiff claims that she sustained economic injury because Defendant's allegedly false reference prices caused her to pay an "inflated price" or

9

"price premium" for the merchandise (the "price-premium theory"). *See id.* ¶¶ 44–45. The Court addresses each theory of injury in turn.

### A. The Purchase-Price Theory of Injury

Though Plaintiff raises this theory in her complaint, *see id.* at ¶¶ 41–42, she appears to abandon it in her opposition to the motion to dismiss. This was a wise choice because "of the two theories [Plaintiff] initially alleged, only the [price-premium] theory has been recognized as cognizable" in the context of New York consumer protection laws. *Premium Brands*, 2024 WL 2978506, at *5. Indeed, New York law rejects the purchase-price theory of injury because it "impermissibly combines the deception (the appearance of a bargain) with injury (there was no actual bargain)." *Belcastro v. Burberry Ltd.*, No. 16-cv-1080, 2017 WL 5991782, at *3–4 (S.D.N.Y. Dec. 1, 2017) ("*Burberry II*"); *Premium Brands*, 2024 WL 2978506, at *6 (noting that courts in this Circuit "have repeatedly rejected" the purchase-price theory of injury "in other outlet store cases, where, as here, a plaintiff believed she was getting a bargain based on a fictitious original price and seeks compensation for her subjective disappointment upon discovering that there was never any bargain at all," and collecting cases).

### B. The Price-Premium Theory of Injury

Moving on to the price-premium theory of injury, to adequately allege injury under this theory, "plaintiff must allege not only that defendants charged a price premium, but also that there is a connection between the misrepresentation and any harm from, or failure of, the product." *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 350 (S.D.N.Y. 2020). To allege a sufficient connection, a plaintiff must show "either that because of a misrepresentation the plaintiff received a good worth less than what he paid for, *i.e.*, a good of inferior quality, or that

10

because of a misrepresentation the plaintiff paid an inflated price." *Burberry II*, 2017 WL 5991782, at *4. For the reasons discussed below, Plaintiff fails to satisfy either basis.

      i.  <u>Allegations of Inferior Quality</u>

With respect to the "inferior goods" basis to the price-premium theory, Plaintiff contends that she has sufficiently demonstrated that she purchased an inferior good because the product at issue was made specifically for Defendant's outlet stores, not for Defendant's "mainline" (*i.e.*, non-outlet) stores. ECF No. 1 ¶ 27; ECF No. 12 at 15. Courts in this Circuit have found price-premium injury based on inferior goods when the product is advertised as possessing a unique quality, the company charges a premium price based on that quality, and plaintiff pays the premium price only to later learn that the unique quality is, in fact, absent from the product. *See e.g.*, *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 292–93 (S.D.N.Y. 2015) (price premium based on marketing that promised lozenges were "clinically proven" to reduce cold symptoms); *Duran*, 450 F. Supp. 3d at 350 (price premium based on hair gel labeling that promised "no flakes" and collecting cases). Therefore, the relevant concern here is not the location where a product may ultimately be sold, it is the quality of the product. Plaintiff does not adequately allege a unique quality for which she paid a premium, nor does she allege that the product she purchased was otherwise defective. She may have been disappointed, but "disappointed bargain-hunters do not suffer any actual injuries or damages simply because they did not get as good a deal as they expected." *Ham v. Lenovo (U.S.) Inc.*, 664 F. Supp. 3d 562 (S.D.N.Y. 2023).

ii. Allegations of Inflated Price

To adequately allege a price-premium injury based on allegations that a plaintiff paid an inflated price, "a plaintiff must allege that he overpaid by some objective measure, and not just that he felt, subjectively, that he overpaid." *Burberry II*, 2017 WL 5991782, at *4. In the instant case, Plaintiff offers a regression analysis, ECF No. 1 ¶¶ 44–52, that purports to demonstrate that the "actual value" of her sports bra "is approximately $8.75," and, when compared to the reference price (of $34.97) and discounted price (of $17.48), the delta between the actual value and discounted price is sufficient to allege that she overpaid for the item by an objective measure. *See* ECF No. 12 at 14, 14 n.8. Defendant disagrees and argues that Plaintiff's regression analysis fails to "establish the objective true market value" of the purchased merchandise. ECF No. 11-1 at 14.

Plaintiff's reliance on her regression analysis is misplaced. In *Premium Brands*, the court considered whether a similar regression analysis was sufficient to demonstrate the requisite "objective measure" of overpayment. 2024 WL 2978506, at *7–8. There, plaintiffs, with the assistance of "qualified expert economists and consultants," claimed they were "able to determine the objective measure by which plaintiffs . . . overpaid for the goods they purchased" through use of a regression analysis that, when combined with the price differential between the average reference price and the average discount price, suggested that "selling prices were $25.78 higher, on average." *Id.* Plaintiff makes the same argument here. *Compare id., with* ECF No. 1 ¶¶ 46–51 (conducting a near-identical analysis, using near-identical descriptions, and concluding that the "selling prices were approximately $13.74 higher, on average"). In *Premium Brands*, the regression analysis was insufficient to show that plaintiffs in that case had overpaid by an objective measure. The court there found that, "[e]ven in the light most favorable to

12

plaintiffs," the court did "not see how their analysis actually provides any insight as to the true market value of defendant's products." *Premium Brands*, 2024 WL 2978506, at *8. The court explained that comparing the difference between the reference price and the discount price may be sufficient to allege overpayment by objective measure, if the difference between the reference and discount prices is then compared to the "market sale price." *Id.* But, plaintiffs analysis failed because it:

> simply does not measure this difference. Indeed, even a cursory glance at its methodology reveals that the analysis only examines the relationship between defendant's reference and sale prices. Thus, while the analysis may be able to establish an unsurprising correlation between these prices – that as reference prices are increased, so too are sale prices – it clearly cannot establish the type of causal relationship plaintiffs claim it does: that sale prices were increased because of an increase in the reference prices. In short, plaintiffs' analysis says nothing about the real market value of defendant's products or the price those products would have sold for absent the allegedly false reference price.

*Id.* Here, Plaintiff offers virtually the same analysis to arrive at the same allegation. This analysis suffers from the same problems identified by the court in *Premium Brands*, and this Court is unpersuaded for the same reasons. Plaintiff's "experts' analysis does not provide an objective measure by which [Plaintiff was] overcharged." *Id.*

Plaintiff's attempts to distinguish the regression analysis in this case from the near-identical analysis in *Premium Brands* are unavailing. Plaintiff argues that her regression analysis is different because it accounts for variables that were not considered in the analysis presented to the *Premium Brands* court, ECF No. 12 at 13–14, but the variables that Plaintiff considers (*e.g.*, whether a product is a pair of pants or a t-shirt, and whether the given product is marketed towards men or women) account for differences among Defendant's products; they do not

13

account for differences between the prices charged for Defendant's products and the prices charged for similar products industry-wide.

At bottom, Plaintiff's emphasis on the variables in this regression analysis, as compared to those in *Premium Brands*, is a distinction without a difference. Plaintiff's so-called "sophisticated regression analysis," ECF No. 1 ¶ 46, is, in fact, nothing more than a rudimentary extrapolation that measures price points that are inapposite to the relevant inquiry. Plaintiff merely takes the sum of the discount prices of 86 of Defendant's own outlet products, divides that by the sum of the reference prices for those same products, and then merely applies that ratio to the discount price of the sports bra to arrive, ostensibly, at the item's "actual value." *Id.* ¶¶ 48–51; ECF No. 12 at 14, 14 n.8 ("Reference price ($34.97) [minus] actual selling price ($17.48) = $17.49 (reference/discount differential). $17.49 [multiplied by] regression coefficient (0.5) = $8.75.").

Plaintiff spends nearly four pages of her complaint dressing up this rudimentary extrapolation as a complex statistical exercise, *see* ECF No. 1 ¶¶ 43–51, and alleges that this "analysis" demonstrates some objective measure of overpayment. *See* ECF No. 1 ¶ 46. It doesn't. Plaintiff's allegations are too speculative, even at this stage, to sustain a claim that Defendant inflated its prices above some objective market value. Instead, Plaintiff's allegations compel a finding that she failed to assert a cognizable injury under the "inflated price" basis to the price-premium theory.

For the reasons discussed above, Plaintiff fails to allege an injury under the purchase-price theory or the price-premium theory. Accordingly, Plaintiff has not stated a cognizable injury under New York law and her claims under GBL §§ 349 and 350 are dismissed.

**III.     Leave to Amend**

In a perfunctory line in the conclusion of her opposition to the motion to dismiss, Plaintiff requests that if the Court grants any part of Defendant's motion, it grant her leave to amend her complaint.  ECF No. 12 at 28.  When a party seeks to amend a pleading after the 21-day window that permits amendment "once as a matter of course" (Rule 15(a)(1)), that party must seek permission from the Court.  *See* Fed. R. Civ. P. 15(a)(2).  In those instances, courts "should freely give leave when justice so requires." *Id.*  The decision to grant or deny an opportunity to amend is a matter of discretion for the Court, and the Court should deny leave to amend if amendment:  (1) would cause undue delay; (2) is the product of bad faith or dilatory motive; (3) is requested after repeated failures to cure deficiencies in previously allowed amendments; (4) would exert undue prejudice on the opposing party; or (5) would be futile.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

Here, the Court denies Plaintiff's request to amend the Complaint because amendment would be futile.  Plaintiff has not identified how she might amend her complaint to address the defects.  *See Singh v. Schikan*, No. 14-cv-5450, 2015 WL 4111344, at *1 (S.D.N.Y. June 25, 2015) (describing denial of leave to amend based on a "one[-]sentence, boilerplate request"). Even if she did, nothing in the record suggests that Plaintiff could, in fact, amend her complaint to adequately allege a cognizable injury here.  *See In re Sibanye Gold Ltd. Sec. Litig.*, No. 18-cv-3721, 2020 WL 6582326, at *21 (E.D.N.Y. Nov. 10, 2020) ("Where nothing in the record suggests that another complaint could remedy the legal deficiencies, the district court does not abuse its discretion in failing to provide . . . leave to amend."); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in the absence of

15

any indication that plaintiff could or would amend such that amendment would lead to a different result).

Further, although Plaintiff was on notice that claims like the ones she brings here are insufficient, she nevertheless brought them. Plaintiff is represented by counsel who routinely file "outlet store cases" consisting of claims under GBL §§ 349 and 350, including cases filed in this Circuit that have been dismissed for reasons similar, if not identical, to the reasons discussed in this Order. *See Michael Kors (USA), Inc.*, 2024 WL 3227943; *Premium Brands*, 2024 WL 2978506; Part II.B, *supra*. Despite unambiguous precedent explaining how such claims were deficient, Plaintiff recycles them and brings the same speculative and conclusory allegations before this Court. This sort of rinse-and-repeat approach to litigation militates against granting leave to amend. *Cf. Warren v. Coca-Cola Co.*, 670 F. Supp. 3d 72, 90 (S.D.N.Y. 2023) ("Generally, the failure to fix deficiencies in an initial pleading, after being provided notice of those deficiencies, is alone sufficient ground to deny leave to amend."); *Malek v. N.Y. Unified Ct. System*, No. 22-cv-5416, 2023 WL 2429528, at *21 (E.D.N.Y. Mar. 9, 2023) (finding leave to amend would be futile when separate complaints in separate actions rely on similar facts "and contain the same legal theories"); *see also Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (noting "[l]eave to amend is especially inappropriate" when plaintiff proposes amendments that were "merely recycled versions" of claims that "had already fallen victim to a motion to dismiss").

Where, as here, "the plaintiff is unable to demonstrate that [s]he would be able to amend [her] complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied." *Hayden v. Cnty. of Nassau,* 180 F.3d 42, 52 (2d Cir. 1999). Accordingly, the Court denies Plaintiff's request to amend her complaint.

16

## **CONCLUSION**

For the foregoing reasons, the Court finds that Plaintiff has failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Court GRANTS Defendant's motion to dismiss Plaintiff's complaint, with prejudice. *See* ECF No. 11. The Clerk of Court is respectfully directed to enter judgment consistent with this Order and close this case.

SO ORDERED.

                                                                */s/ Hector Gonzalez*
                                                                 HECTOR GONZALEZ
                                                                 United States District Judge

Dated: Brooklyn, New York
         September 11, 2025